UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
                                                         :
                                                         :
                                                         :
IN RE 650 FIFTH AVENUE AND                               :          No. 08-Civ-10934 (KBF)
RELATED PROPERTIES                                       :
                                                         :          ECF Case
                                                         :
                                                         :
                                                         :
                                                         :
                                                         :
-------------------------------------------------------- X


**ASSA CORP.'S AND ASSA LIMITED'S MEMORANDUM OF LAW IN OPPOSITION
TO THE UNITED STATES OF AMERICA'S  MOTION FOR SUMMARY JUDGMENT**


ROSEN LIVINGSTON & CHOLST LLP
275 Madison Avenue, Suite 500
New York, New York  10016


JAFFE & ASHER LLP
600 Third Avenue, 9th Floor
New York, New York  10016


*Attorneys for Defendants*
    *Assa Corp. and Assa Limited, s/h/a Assa*
    *Company Limited*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTS ........................................................................................................ 2

ARGUMENT .................................................................................................................... 2

I.    THE  DRASTIC REMEDY OF SUMMARY
      JUDGMENT IS NOT APPROPRIATE AGAINST THE DEFENDANTS ........................ 2

II.   ASSA'S ASSETS ARE NOT SUBJECT TO
      FORFEITURE AS THE "PROCEEDS" OF CRIME .......................................................... 4

      A.    THE GOVERNMENT HAS NOT
            ESTABLISHED ANY IEEPA VIOLATION BY ASSA ...................................... 5

      B.    THE NET PROCEEDS DEFINITION APPLIES ................................................ 9

      C.    EVEN IF THE GOVERNMENT COULD PROVE IEEPA VIOLATION, NOT
            ALL OF ASSA'S ASSETS ARE FORFEITABLE UNDER A PROCEEDS THEORY ............ 12

III.  THE SEIZED ASSA ASSETS WERE NOT "INVOLVED IN"
      ANY ALLEGED MONEY LAUNDERING OFFENSE ................................................... 16

IV.   THE TRANSLATED DOCUMENTS RELIED ON BY THE
      GOVERNMEN IN SUPPORT OF ITS MOTION ARE INADMISSIBLE ....................... 20

V.    ASSA'S DUE PROCESS RIGHTS HAVE BEEN VIOLATED ..................................... 22

      A.    THE GOVERNMENT IS IMPROPERLY USING ITS
            CRIMINAL INVESTIGATION TO INTIMIDATE WITNESSES .......................... 23

            a.    The Government Coerces Tafti To Be Interviewed ............................... 23

            b.    The Government Scared Defendants' Witnesses
                  From Testifying At Their Scheduled Depositions ................................. 24

      B.    THE GOVERNMENT HAS ABUSED DISCOVERY HEREIN ........................... 26

VI.   THE MOTION SHOULD BE DENIED
      BECAUSE DISCOVERY IS INCOMPLETE .................................................................. 28

CONCLUSION ................................................................................................................. 30

## TABLE OF AUTHORITIES

*Adickes v. S.H. Kress & Co.,*
        398 U.S. 144 (1970) ......................................................................................3

*Amaker v. Foley,*
        274 F.3d 677 (2d Cir. 2001) ......................................................................... 3

*Amirkhanian v. U.S.I.N.S.,*
        119 F. App'x 302  (2d Cir. 2004) ................................................................ 21

*Anderson v. Liberty Lobby, Inc.,*
        477 U.S. 242 (1986) ......................................................................................3

*Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.,*
        100 F. Supp. 2d 178 (S.D.N.Y. 2000) ..........................................................30

*Azrielli v. Cohen Law Offices,*
        21 F.3d 512 (2d Cir.1994) ............................................................................ 3

*Celotex Corp. v. Catrett,*
        477 U.S. 317 (1986) .................................................................................... 28

*Chan v. Triple 8 Palace, Inc.,*
        No. 03 Civ. 6048, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) ...................... 3

*Cont'l Cas. Co. v. Marshall Granger & Co., LLP,*
        No. 11 Civ. 3979, 2013 WL 372162  (S.D.N.Y. Jan. 31, 2013)................................28, 29

*Elliott Assocs., L.P. v. Republic of Peru,*
        961 F. Supp. 83 (S.D.N.Y. 1997)..................................................................28

*Four Star Capital Corp. v. Nynex Corp.,*
        183 F.R.D. 91 (S.D.N.Y. 1997) ...................................................................28

*Giannullo v. City of New York,*
        322 F.3d 139 (2d Cir. 2003)........................................................................... *3*

*In Re 650 5th Avenue and Related Properties,*
        777 F. Supp 2d 529 (S.D.N.Y. 2011)............................................... 5, 9, 10, 13, 17, 19, 20

*Jenkins v. McKeithen,*
        395 U.S. 411 (1969)....................................................................................23

*Kadi v. Geithner,*
        No. 09 Civ. 0108, 2012 WL 898778 (D.D.C. Mar. 19, 2012)
        *appeal dismissed*, 12-5076, 2012 WL 3243996 (D.C. Cir. July 31, 2012) ..................... 22

*Kassim v. City of Schenectady*,
    415 F.3d 246 (2d Cir. 2005)............................................................................20, 21

*Long Island Lighting Co. v. Barbash*,
    779 F.2d 793 (2d Cir. 1985).......................................................................................28

*Martinez v. Hilton Hotels Corp.*,
    No. 10 Civ. 7688, 2013 WL 1087211 (S.D.N.Y. Mar. 15, 2013) .......................................2

*Melini v. 71st Lexington Corp.*,
    No. 07 Civ. 701, 2009 WL 413608 (S.D.N.Y. Feb. 13, 2009) ...........................................2

*Nat'l R.R. Passenger Corp. v. Steadfast Ins. Co.*,
    No. 06 Civ. 6072, 2009 WL 1873719 (S.D.N.Y. June 30, 2009)......................................30

*Park Ave. Bank, N.A. v. Bankasi*,
    No. 93 Civ 1483, 1995 WL 739514, (S.D.N.Y. Dec. 13, 1995)
    *aff'd sub nom. Park Ave. Bank, N.A. v. Ziraat Bankasi*, 101 F.3d 1393 (2d Cir. 1996)... 28

*Patterson v. County of Oneida, N.Y.*,
    375 F.3d 206, 219 (2d Cir. 2004) .........................................................................3

*Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*,
    No. Civ. 5684, 2000 WL 34017119, (C.D. Cal. Sept. 18, 2000)
    *aff'd*, 64 F. App'x 70 (9th Cir. 2003) ...................................................................... 21

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir.1997) ....................................................................................3, 10

*Realtime Data, LLC v. Morgan Stanley*,
    No. 11 Civ. 6696, 2012 WL 5835303 (S.D.N.Y. Nov. 15, 2012).........................................2

*Stern v. Trustees of Columbia Univ.*,
    131 F.3d 305 (2d Cir.1997) ....................................................................................3

*U.S. v. Accounts Maintained at Am. Express Bank*,
    832 F. Supp 542 (E.D.N.Y 1993)........................................................................... 7, 15

*U.S. v. All Funds on Deposit in United Bank of Switz.*,
    *New York, New York, Account Number101WA263232000*,
    No. 01 Civ. 2091, 2003 WL 56999 ( S.D.N.Y. Jan 7, 2003) ...........................................7

*United States v. Coke*,
    No 07 Cri.  971, 2011 WL 3738969 (S.D.N.Y. Aug. 22, 2011) .........................................22

*United States v. Delia,*
    944 F.2d 1010 (2d Cir. 1991) ........................................................................23

*United States v. Dennis,*
    237 F.3d 1295 (11th Cir.2001) ....................................................................13

*U.S. v. Homa Int'l Trading Corp.,*
    387 F. 144 ( 2d Cir. 2004) ..........................................................................7

*United States v. Ladum,*
    141 F.3d 1328 (9th Cir.1998) ....................................................................13

*United States v. Levine,*
    970 F.2d 681 686 (10th Cir.1992) ..............................................................13

*United States v. Mi Sun Cho,*
    713 F.3d 716 (2d Cir. 2013) ......................................................................23

*United States v. Morelli,*
    169 F.3d 798 (3d Cir.1999) ........................................................................13

*United States v. Napoli,*
    54 F.3d 63 (2d Cir. 1995),
    *superseded in part on other grounds as recognized in*
    United States v. Genao, 343 F.3d 578 (2d Cir. 2003) ......................................17

*United States v. Piervinanzi,*
    23 F.3d 670 (2d Cir. 1994) ........................................................................17

*United States v. Pinto,*
    850 F.2d 927 (2d Cir. 1988) ......................................................................23

*United States v. Torres,*
    703 F. 194  (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2782, (2013) ..........................13, 14

*United States v. Yusuf,*
    536 F.3d 178, 185 (3d Cir.2008) ................................................................13

*Varda, Inc. v. Ins. Co. of N. Am.,*
    No. 85 Civ. 8133, 1992 WL 122759 (S.D.N.Y. May 26, 1992) ..........................................2

*Washington v. Texas,*
    388 U.S. 14 (1967) ..................................................................................23

*Windsor v. McVeigh,*
    93 U.S. 274 (1876) ..................................................................................23

iv

## Federal Statutes

18 U.S.C. § 981(a)(1)(C) ........................................................................................4

18 U.S.C. § 981(a)(2)(A) ........................................................................................9

18 U.S.C. § 981(a)(2)(B) ....................................................................................9, 10

18 U.S.C. § 983(c) ................................................................................................17

18 U.S.C. § 983(c)(1) .............................................................................................4

18 U.S.C. § 983(c)(3) .............................................................................................4

18 U.S.C. § 984 ......................................................................................................7

18 U.S.C. § 1956 ..................................................................................................15

18 U.S.C. §1956(a)(1)(B)(i) ..................................................................................17

18 U.S.C. §1956(a)(2)(B)(i) ..................................................................................20

18 U.S.C. § 1956(c)(7) ...........................................................................................4

50 U.S.C. §1705 .................................................................................................6, 7

50 U.S.C. §1705(a) ................................................................................................4

50 U.S.C. § 1702(a)(1)(A)(i) ...............................................................................5, 8

## Federal Rules

Fed. R. Evid. 901(a) .............................................................................................20

Fed. R. Civ. P. 56(d) ............................................................................................28

Fed. R. Civ. P. 56(f) .............................................................................................28

Defendants Assa Corp. and Assa Limited s/h/a Assa Company Limited ("Assa Ltd."); (collectively, "Defendants" or "Assa") respectfully submit this memorandum of law in opposition to the motion for summary judgment (the "Motion") made by the United States of America (the "Government"). For the reasons that follow, the Motion should be denied.

## PRELIMINARY STATEMENT

The Government's Motion should be denied because the Government has utterly failed to meet its *prima facie* burden on this summary judgment motion. The Government is seeking to forfeit tens, if not hundreds of millions of dollars of Assa's assets. In doing so, the Government alleges that all of Assa's assets are "proceeds" of an IEEPA violation by Assa, and that all of Assa's assets are "involved in" money laundering. The Government, however, has simply failed to support the Motion with any admissible evidence. More specifically, the Government has failed to proffer any evidence establishing that either Assa Corp. or Assa Ltd. sent any money to Bank Melli, a prerequisite for the Government to succeed on its Motion.

Moreover, the Motion should be denied because the Government's vexatious and dilatory discovery practices, coupled with its rampant witness intimidation have violated Assa's due process rights. The Government has conveniently failed to produce documents relevant to depositions only after they occurred, failed to comply with the Court's discovery orders, and leveraged the ongoing criminal investigation related to this civil action in order to coerce witnesses into testifying on the Government's behalf or not testifying at all. The Court cannot now reward this unprecedented course of conduct by granting the Motion. Finally, discovery is far from complete in this action with the OFAC deposition – one of the key depositions – scheduled for September 3, 2013, after the due date for these reply papers.

Accordingly, the Governments' Motion should be denied in its entirety.

1

## RELEVANT FACTS

The Court is respectfully referred to the accompanying declaration of Deborah B. Koplovitz dated August 30, 2013 (the "Koplovitz Decl."), and the declaration of Bension D. De Funis, dated August 30, 2013 (the "De Funis Decl."), and the exhibits annexed thereto for a recitation of the relevant facts.

## ARGUMENT

## I

## THE  DRASTIC REMEDY OF SUMMARY JUDGMENT IS NOT APPROPRIATE AGAINST THE DEFENDANTS

Summary judgment is a "drastic remedy… [that ] should not be granted where there is any doubt as to the existence of a material and triable issue, or where the issue is arguable. *Varda, Inc. v. Ins. Co. of N. Am.*, No. 85 Civ. 8133, 1992 WL 122759, *2 (S.D.N.Y. May 26, 1992).   This is especially so in connection with motions for partial summary judgment which are highly disfavored.  *Melini v. 71st Lexington Corp.*, No. 07 Civ. 701, 2009 WL 413608, *3 (S.D.N.Y. Feb. 13, 2009) ("partial summary judgment motions that fail to fully resolve even that issue for any given cause of action are disfavored") (cited by Plaintiffs).

When deciding a motion for summary judgment, the Court's "function … is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688, 2013 WL 1087211, *6 (S.D.N.Y. Mar. 15, 2013).  *See also Realtime Data, LLC v. Morgan Stanley*, No. 11 Civ. 6696, 2012 WL 5835303, *4 (S.D.N.Y. Nov. 15, 2012) (Forrest, J.) ("In ruling on a motion for summary judgment, a court cannot, however, weigh the evidence or make credibility determinations: those are the functions of the jury.")

Moreover, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). *See also Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997); *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir. 2004). The Court may rely upon only material that is admissible or usable at trial. *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994). S*ee, e.g., Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997).

Also, it "is incumbent upon the moving party to support its motion with exhibits appropriately cited, to establish that there are no genuine issues of material fact in dispute, and to establish that it is entitled to summary judgment as a matter of law." *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048, 2006 WL 851749, *16 (S.D.N.Y. Mar. 30, 2006) (internal quotations and corrections omitted). *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001) ("the burden of the non-movant to respond arises only if the motion is properly supported and therefore summary judgment only is appropriate when the moving party has met its burden of production under Fed. R. Civ. P. 56(c) to show initially the absence of a genuine issue concerning any material fact.") (internal quotations omitted), quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 (1970).

Where the moving party fails to meet its burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Amaker,* 274 F.3d at 681, quoting *Adickes,* 398 U.S. at 160 (internal quotations omitted) (emphasis added). *See also Giannullo v. City of New York,* 322 F.3d 139, 140-41 (2d Cir. 2003) (a non-movant is not required to rebut the movant's insufficient "showing").

Here, the Government is seeking to forfeit all of Assa's 40% interest in the 650 Fifth Avenue Company, the building itself, Assa's bank accounts, and its share of monies in the bank

accounts of the 650 Fifth Avenue Company on the grounds that all of this property is "proceeds" of an IEEPA violation by Assa, and on the grounds that all of this property, is property "involved in" money laundering. The Government's action is governed by the Civil Asset Forfeiture Reform Act (CAFRA), which requires that the Government establish, by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). With respect to the Government's claim for forfeiture based on alleged money laundering, the Government is required to prove that there was a "substantial connection" between the defendant property and the alleged offense, since the Government is proceeding under a theory that the properties were used to commit or facilitate the commission of an IEEPA offense. *Id*. at § 983(c)(3).   Because the Government has failed to meet its burden, the Motion should be denied.

## II

### ASSA'S ASSETS ARE NOT SUBJECT TO FORFEITURE AS THE "PROCEEDS" OF CRIME

The Government, in this action purports to seek forfeiture of Assa's significant assets under 18 U.S.C. § 981(a)(1)(C). This Statute subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from *proceeds* traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in §1956(c)(7) of this title), or a conspiracy to commit such offense."   18 U.S.C. § 981(a)(1)(C) (*emphasis supplied*). Included among the offenses listed in § 1956(c)(7), is a violation of IEEPA, codified at 50 U.S.C. § 1705, the proceeds of which are subject to forfeiture.[1]   As set forth below, however, the Government has not met its burden to demonstrate that Assa's Assets are crime proceeds.

---

[1]      50 U.S.C. §1705(a) states that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter."

## A.   THE GOVERNMENT HAS NOT ESTABLISHED ANY IEEPA VIOLATION BY ASSA

Pursuant to the clear language of the statute, IEEPA applies only to "transfers of value," 50 U.S.C. § 1702(a)(1)(A)(i). As this Court has determined, the allegations relating to Assa Corp.'s alleged IEEPA violation involved Assa Corp. transferring money to Assa Limited and then to Bank Melli. *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 559 (S.D.N.Y. 2011). Indeed, the Government asserts repeatedly in its memorandum of law that money was sent from Assa Corp. to Bank Melli . For example, the Government alleges that Assa Corp. sent "millions of dollars to Bank Melli". *See* The Government's  Memorandum of Law in Support of its Motion for Summary Judgment (the "Gov. Memo"), at page 33. In fact, however, there is not a single money transfer or check substantiating that any monetary transfer was actually made to Bank Melli by either Assa Corp. or Assa Ltd.

Instead, the Government's motion papers, relying on inadmissible bank records and checks, reveal that some checks were written, and some wire transfers were effectuated by Assa Corp. to *Assa Limited*, and only then, until December, 2006 at the very latest. [2] Exs. 57, 58, 59, 93, 94, 95, 96 to the Declaration of ███████████████ in Support of the Government's Motion for Summary Judgment; the "███████ Decl.".  Assa's assets are therefore not forfeitable as proceeds, because the Government has not sustained its substantial burden to demonstrate that a criminal violation of IEEPA took place.

---

[2]     This is notwithstanding the fact that the bank accounts and checks have not been authenticated and are inadmissible hearsay.

Apparently, the Government believes that rather than sustain its burden to prove that any monetary transfers were made to Bank Melli, it is sufficient to merely assert, without any admissible evidentiary support, that "Assa Corp. and its parent, Assa Ltd. *are* Bank Melli" (Gov. Memo at 33) (*emphasis as in original*). However, the use of a word in italics does not sustain the Government's substantial burden on this motion to prove that funds were, in fact, transferred to Bank Melli in violation of IEEPA. Moreover, the Government has not even proven that Asaa "*is*" Bank Melli. Not one of the documents cited to by the Government, even if it was an admissible document, demonstrates that Bank Melli owns Assa to date.  In fact, as set forth in the declaration of Mr. ████, he and Mrs. ████ are the owners of Assa Limited, and Bank Melli has neither ownership interest, nor control over them. De Funis Decl, Ex, A, ¶¶ 2, 15.  On this ground alone, the Government has failed to demonstrate that there was any violation of IEEPA, and the motion must be denied.

As further clarification of the Government's failure on this Motion is the fact that, by the Government's own exhibits to its motion papers, it is clear that the Government has not, and cannot establish that any money was transferred to Assa Limited by Assa Corp. after October 25, 2007, when Bank Melli was designated on OFAC's SDN list. Thus, there is, by the Government's own papers, no violation of 50 U.S.C. §1705 after that date.

Indeed, there is no email after March 6, 2006 allegedly sent by or to Mr. ████ on Assa's behalf, let alone any monetary transfer to Assa Limited even close to the October 25, 2007 date. Therefore, the Government's assertion that Assa Corp. was required to obtain a license from OFAC to keep money here in the United States and to pay United States taxes defies logic, especially since the Government does not allege that any activity was taken with any of Assa Corp.'s partnership distributions from the 650 Fifth Avenue Company after October 25, 2007,

when Bank Melli was blocked by OFAC. Accordingly, there can be no violation of 50 U.S.C. § 1705 after December 11, 2006, at the latest, since Assa took no step at all after that date. Notably, the Government concedes at page 44 of its Memorandum that partnership distributions were made by the Alavi Foundation only until December 5, 2007. Thus, from the period of 2006 through December 5, 2007, the Government, by its own argument, negates the claim that Assa violated IEEPA by failing to obtain an OFAC license in order to provide services to Bank Melli after October 25, 2007[3].

It is inconceivable that, in the absence of any demonstration of any actual monetary transfer to Bank Melli, the Government still presses on with its untenable claim that an IEEPA violation occurred simply by virtue of Assa Corp. "1) acting as a front for Bank Melli to shield it from judgment creditors and law enforcement, 2) managing its substantial investment interest in 650 Fifth Avenue Company". (Gov. Memo at 33). Infact, none of the cases cited by the Government stand for the proposition that alleged actions such as these, even if they had been proven, without any money transfers, constitute a service in violation of IEEPA. *See e.g. U.S. v. Homa Int'l Trading Corp.,* 387 F. 3d 144, 146 (2d Cir. 2004); *U.S. v. All Funds on Deposit in United Bank of Switz., New York, New York, Account Number 101WA263232000*, No. 01 Civ 2091, 2003 WL 56999, at *1(S.D.N.Y. Jan 7, 2003).

---

[3]     Since the Government concedes in its own motion papers that the vast majority of the $3,000,000 it seized from Assa were deposited well before October 2007, and in any event no later than December 5, 2007, the Government has run into a fungibility problem., because as to Assa, the Government cannot establish any violation of IEEPA took place in the year prior to the seizure. *See* 18 U.S.C. § 984; *United States v. U.S. v. Accounts Maintained at Am. Express Bank*, 832 F.Supp. 542, 560 (E.D.N.Y. 1993) (stating that any cause of action for forfeiture of fungible property under § 984 must be brought within one year of the alleged unlawful transaction). Accordingly, since the $3,000,000 was seized from Assa in October, 2008 as set forth in the Amended Complaint, and since the Government's own motion papers indicate that no transfer to Assa Limited occurred after December 11, 2006, the Government cannot forfeit the seized funds. Even if it could overcome this barrier, since the Government has not demonstrated that any money was even deposited in Assa Corp.'s accounts, let alone sent to Assa Limited after Bank Melli was designated as an SDN, the Government cannot make out any entitlement to the vast majority of the $3,000,000 it seized from Assa Corp.

Even if the cases cited to by the Government could support a conclusion that Assa provided services in the absence of any factual demonstration that money was sent to Bank Melli, none of the arguments as to the alleged provision of services makes sense. As to the first assertion, there is no admissible document submitted which indicates that Assa had any judgment creditors, nor that any action was taken to "shield Bank Melli" from law enforcement or OFAC. Rather, it seems that the Government has conflated its alleged facts as to Alavi with Assa as to these purely argumentative statements. Moreover, as to the allegation of "managing the investment", this assertion also fails since payment of U.S. taxes, sending emails, and especially consulting with counsel (gov. memo at 34), are in no way prohibited by the ITRs in the absence of any monetary transfer.

When issuing an order denying Assa's motion to dismiss the Amended Complaint, Judge Holwell may have ruled, *in dicta,* that as part of the allegations of sending money to Bank Melli, there were also the incidental services provided in the forms of emails, payment of taxes, and the like, but Judge Holwell's determination cannot be read to mean that without any demonstration of any payment to Bank Melli, these minor acts can constitute services in violation of IEEPA. IEEPA prohibits transfers of value, at its core. Indeed, this is so because pursuant to 50 U.S.C. 1702 (a)(1)(A), IEEPA grants the President the power to "investigate, regulate or prohibit (i) any transactions in foreign exchange, (ii) transfers of credit or payments between, by, through or to any banking institution, to the extent that such transfers or payments involve any interest of any foreign country or a national thereof, (iii) the importing or exporting of currency or securities, by any person, or with respect to any property, subject to the jurisdiction of the United States." *Id.* This statute does not relate to other services which are provided in the absence of any monetary transfer.

To the extent that this Court does determine that Mr. █████'s alleged management services and emails constitute "services" even in the absence of any monetary transfer to Assa Limited, let alone in the absence of monetary transfers to Bank Melli, then the only "proceeds" of those services would be whatever fees Mr. █████ earned for his work, under the net proceeds requirement set forth below.

Nor has the Government demonstrated any other alleged IEEPA violations in Footnote 5. (Gov. Memo at page 34). There is no fact which demonstrates that Assa imported anything from Bank Melli, and certainly no fact which demonstrates that Assa imported anything or made any new investment in any property owned or controlled by the Iranian Government.[4] Accordingly, the "other" IEEPA violations alleged in the Amended Complaint and Government's motion are easily disposed of.

## B.   THE NET PROCEEDS DEFINITION APPLIES

The Government again argues for this Court to apply the "gross proceeds" definition from 18 U.S.C. § 981(a)(2)(A) but has not submitted any admissible fact that indicates that there was any concealment from judgment creditors of Bank Melli's alleged ownership by Assa Corp. which could arguably give rise to this application. Accordingly, this Court has already instructed that as to Assa Corp., the net proceeds definition of 18 U.S.C. § 981 (a)(2)(B) applies. *In Re 650 5th Avenue and Related Properties,* 777 F. Supp 2d 529, 551-552 (S.D.N.Y. 2011) ("Transferring funds, managing business affairs and real estate investments….. are only alleged to be illegal here because they were performed for the Iranian government.).  As to Assa, therefore, "the term 'proceeds' means the amount of money *acquired* through the illegal transactions resulting in the

---

[4]     The Government addresses in one paragraph, its argument that that rental income from the 650 Fifth Avenue Company is proceeds, but the Government has failed to establish that Assa Corp. had any knowledge as to the Alavi Foundation's alleged connection to the Iranian Government. Thus, as to Assa Corp., its share of the rental income from the building has not been shown to be proceeds.

forfeiture, less the direct costs incurred in providing the goods or services" pursuant to 18 U.S.C. § 981(a)(2)(B). *Id.*

The Government's motion is devoid of any admissible fact which could give rise to a finding that Assa concealed "ownership of assets from a judgment creditor". (Gov. Memo at 36). This assertion, and others like it which appear throughout the Government's brief, are transparent attempts to now redraft the allegations of the Amended Complaint to fit into the statutory interpretation which is the law of the case, and to obtain an advantage in this matter to which the Government is not entitled. Since there is no allegation in the Amended Complaint, and certainly no admissible fact submitted in support of the Motion, that there were *any* judgment creditors of Assa Corp. at all, the Government's argument in support of this motion should not be accepted by the Court, even if the Government had submitted admissible evidence to this Court.

For example, the Government suggests that Assa "shield[ed] that investment from judgment creditors and law enforcement- including OFAC". (Gov. Memo at 34). Yet, there is not a single admissible document attached to the motion papers which even remotely shows any such "shielding" by Assa. For this reason alone, the Government's argument fails, as the Government, the proponent of a motion for summary judgment, is required to submit evidence in admissible form in support of its motion. *See Raskin v. Wyatt Co.,* 125 F. 3d 55, 66 (2d Cir. 1997) ("principles governing admissibility of evidence do not change on a motion for summary judgment"). Indeed, even upon a superficial review of the argument in the Government's memorandum, there is no fair reading of the facts in the way the Government posits which could support the Government's assertions. For example, the inadmissible letters allegedly written "[i]n the 1990's" are not authenticated, there are no certified translations attached, and these

letters are nothing more than inadmissible hearsay. Second, these alleged letters do not give rise to any concealment, let alone any illegal activity whatsoever, since these letters do not indicate any step or action which was actually taken to "conceal" Bank Melli's interest in Assa, which interest was not illegal in any way in 1994.[5]

Nor do the alleged journals provide any factual support for the Government's assertion. These documents are, in the first instance, unauthenticated and inadmissible hearsay documents and cannot be admitted on this motion. Even if they were admissible, they are not attributable to Assa. Therefore, the Government cannot sustain its burden. The ███████ notes from 2007, which allegedly came into existence long after Bank Melli sold its interest in Assa Limited to Mr. ███████ and Ms. ███████, even were they admissible, do not indicate that any step was taken to conceal anything at that time. Rather, if anything, they simply indicate that individuals may have had concerns about Assa Corp. Similarly, the ███████ notes do not make mention of Bank Melli, and certainly make no record of any action taken to conceal Bank Melli in 2003. Rather, they only allegedly mention a "concern about Assa's 40% share".

The Government's reliance on documents for which no certified translations have been provided, in paragraphs 45, 47, and 48 of its 56.1 Statement is misplaced, as set forth below. Were these documents admissible, they allegedly relate to 1994 correspondence from the ONSD relating to Bank Melli's ownership of Harter Holdings in 1994, and thus, do not give rise to any concealment, or any IEEPA violation as set forth herein, since it was not illegal for Bank Melli to own U.S. property in 1994, nor was it a violation of any executive order for a U.S. person to provide "services" to Bank Melli at that time.

---

[5]    The Government's argument that Assa was created to conceal Bank Melli's interest at page 33 of it Memorandum is defeated by its own assertions in the Memorandum and in the Amended Complaint as well, that Assa was created to "retire Bank Melli's loan on the property". (Am. Comp. at 42).

In fact, as set forth in the declaration of Mr. ██████, he and Ms. ██████ purchased Assa Corp. in 1995, prior to the existence of the Executive Order 12959. De Funis Decl., Ex. A, ¶ 2.  After that date, there is no admissible fact which proves that any step was taken by Assa Corp. to "conceal" Bank Melli's alleged ownership interest. The emails which Mr. ██████ allegedly wrote are not legible, nor do they appear to be written in any known language, Persian or otherwise. Rather, they consist of so many signs such as "%" that they are not comprehensible. In any event, even if this Court credits the Government's version of those emails, then at most, the only "action" which was taken to "conceal" included a question as to whether the "residence" of the shareholders should be changed. There is no demonstrable evidence admitted by the Government that the residence was in fact changed after this alleged discussion.  Accordingly, since the Government has not demonstrated any concealment by Assa Corp., the net proceeds definition applies.

### C.   EVEN IF THE GOVERNMENT COULD PROVE IEEPA VIOLATION, NOT ALL OF ASSA'S ASSETS ARE FORFEITABLE UNDER A PROCEEDS THEORY

The Government seeks to forfeit Assa's 40% interest in the 650 Fifth Avenue Company, as well as the Building itself, and Assa Corp.'s bank accounts and 650 Fifth Avenue Company bank accounts, a portion of which belong to Assa Corp. The Government asserts that rental payments by tenants are proceeds of IEEPA violations, that partnership distributions are proceeds of IEEPA violations, and that the Building and, ostensibly, Assa's 40% share of the partnership which owns the building, are all "proceeds".[6]  This assertion is apparently made despite the fact that Judge Holwell already rejected the Government's assertion that a 40% interest which was created years and years prior to the existence of the regulations which are alleged to have been violated can constitute proceeds on the ground that they were acquired

---

[6]     The Government has not explained under what basis it believes the Minority Interest is forfeitable as "proceeds".

through an IEEPA violation. *In Re 650 Fifth Avenue and Related Properties,* 777 F. Supp. 2d at 555.

That the Government has not heeded Judge Holwell's determination as to what constitutes proceeds, and what does not, and under what theories, is evident by the fact that the Government again cites to the exact same cases that Judge Holwell rejected as being inapplicable to the argument that property "retained" constitutes "proceeds" argument, since those cases are money laundering cases "involving tax fraud…and bankruptcy fraud", etc. *See Id.* at 556-557, discussing *United States v. Yusuf,* 536 F.3d 178, 185, 189 (3d Cir.2008); *United States v. Morelli,* 169 F.3d 798, 806 (3d Cir.1999), *United States v. Dennis,* 237 F.3d 1295, 1301–1303 (11th Cir.2001); *United States v. Ladum,* 141 F.3d 1328, 1340 (9th Cir.1998); *United States v. Levine,* 970 F.2d 681, 686 (10th Cir.1992) which are all again cited to by the Government at page 28 of its brief.

As before, so too, now, the Government cannot and has not established that the minority interest, the Partnership, or the Building are "proceeds" of an IEEPA violation. The one new case – *United States v. Torres,* 703 F. 3d 194, 200 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 2782, 186 L. Ed. 2d 229 (2013) – cited to by the Government in support of its attempt for a second bite at this apple at the "retention" argument is inapposite, and does not stand for the premise the Government asserts. In *Torres,* the Second Circuit limited its holding to the particular facts before it, concluding that:

> [w]here, solely as a result of a criminal offense, a government agency makes payments to a third party, and that third party directly provides the defendant with benefits that have a quantifiable monetary value, the amounts by which those benefits enriched the defendant are clearly "proceeds" that the defendant "obtained ... indirectly"; they constitute "net gain"; and they are property "traceable" to the offense of conviction. Section 981(a)(1)(C) supports the resulting forfeiture.

*Torres,* 703 F. 3d at 202.

The Second Circuit did not, however, as the Government asserts, overrule Judge Holwell. Rather the Second Circuit held, that because Ms. Torres had those funds "available for her use only because she failed to report her income accurately and failed to pay the amount she otherwise would have owed for rent", she acquired the sum of $11,724, albeit indirectly through HUD subsidies, and the sum was held to be "traceable to" that theft. *Id.* at 200. The Second Circuit did not rule that in all circumstances, property which was acquired years before, such as the minority interest, is proceeds. The Second Circuit was concerned with traceability to the crime, not whether property was simply 'retained' as the Government asserts. [7]

Even if this Court agrees that *U.S. v. Torres* accepted the Government's novel "retained" argument, the Government does not assert that Assa Corp.'s minority interest was "retained" by virtue of any activity by Assa traceable to an IEEPA violation. Instead, the Government asserts that "[h]ad the truth been revealed about the Government of Iran's interest and the Bonyad Mostazafan's control over the Building and the Alavi Foundation, the Alavi Foundation would have lost the Building." (Gov. Memo at 39). This argument misses the mark, because if this allegation were true, and the Alavi Foundation "submitted false affidavits and perjurious testimony" in certain litigation to shield its interest from judgment creditors, then at most, the Alavi Foundation would have lost its 60% interest in the Partnership. The entire building would not be lost, and certainly, Assa Corp.'s 40% interest would not have been. Therefore, the Government's suggestion that the Minority Interest is proceeds is simply without any basis, either legal or factual, and this argument should be rejected.

Moreover, the Government's assertion that partnership distributions are proceeds of IEEPA violations is not a tenable argument as to Assa Corp., because even if the Alavi

---

[7]    Even if this Court determines that "retained" is a factor, there is no establishment in the moving papers as to any step taken by Assa Corp. to "retain" its Minority Interest from judgment creditors. Accordingly, for all these reasons, the Minority Interest is not "proceeds".

Foundation were to have lost its 60% interest to judgment creditors, there is no allegation that Assa Corp. would have lost its rights to it 40% of the partnership. Accordingly, as to Assa Corp., its 40% of the partnership revenue is not "proceeds" of IEEPA violations, contrary to the apparent arguments in the Government's brief at, for example, page 39.

Once again, by suggesting that Assa Corp., which has not been demonstrated by the Government to have taken steps to conceal anything, the Government impermissibly broadens the scope of the term "proceeds" and asserts that the underlying asset which *generated* the 40% of the funds can somehow be a *proceed* of that illegal transaction.[8]  To the extent this Court determines that the Minority Interest is subject to forfeiture under the Government's "retained" theory, then it is respectfully submitted that only that portion of the Minority Interest which was used to pay taxes is forfeitable in line with Judge Holwell's determination.

With respect to the Assa's account funds, the Government's own motion paper proves too much, because the documents, if admitted, create a statute of limitations problem for the Government.  In this regard,

> a cause of action to forfeit property that was the result of specified illegal activity under 18 U.S.C. § 1956 accrues, when the proceeds of that violation are deposited into a volatile account, since the deposits may then be deemed as designed to conceal or disguise the nature, the location, or the control of the proceeds.

*See e.g. U.S. v. Accounts Maintained at Am. Express Bank,* 832 F. Supp 542, 560-61 (E.D.N.Y 1993) *internal quotations omitted*. Despite this requirement, and the fact that the Government started this action on December 17, 2008 (Dkt. at 1), the Government nevertheless seeks to forfeit not only approximately $3,000,000 it seized from Assa Corp. in *October, 2008*, but a

---

[8]    Nor is the entire Building forfeitable under the Government's theory that Alavi used IEEPA proceeds to make capital improvements. The Government's argument that but for Alavi's improvement of the building, it would not have increased in value is not tenable in light of the New York Real estate market which, even for buildings which have not been improved, have increased in value significantly since 1989.

portion of partnership monies which had not been distributed to Assa since at least *December 5, 2007*. (Gov. Memo at 44). Accordingly, the money seized in October 2008, and the money in the partnership accounts which are Assa's partnership distributions, are not forfeitable, since they were sitting in those accounts for more than a year prior to this action. [9] Since there was no IEEPA violation as to Assa's share of the money in the partnership accounts as set forth above, which had not been distributed to Assa since December 5, 2007, and since the Government's complaint was not filed for more than one year after December 5, 2007, the monies in the partnership accounts which are Assa's, are <u>not</u> forfeitable to the Government. Similarly, the $3,000,000 seized by the Government in October, 2008 is immune.

As to the $3,000,000 which was seized, and the Assa's share of the money in the partnership accounts, the Government has not, and cannot establish that "but for" any an IEEPA violation, Assa would not have those funds. In particular, the Government asserts that the IEEPA violation was found in that Assa sent money to Bank Melli, and concealed Bank Melli from judgment creditors, but there is no allegation as to any such action to shield, or any money which was alleged sent to Assa Limited since 2006. Indeed, there was no action and certainly no IEEPA violation as to these funds, and, thus, they cannot be deemed to be traceable to an IEEPA violation.

### III

### THE SEIZED ASSA ASSETS WERE NOT<br>"INVOLVED IN" ANY ALLEGED MONEY LAUNDERING OFFENSE

The Government's attempt to forfeit Assa's Assets under a money laundering premise suffers from the same fundamental problem as the "proceeds" argument, yet to a more significant degree. The simple fact that the Government has not established that a single

---

[9]    The Court should note that Judge Holwell not only left the statute of limitations problem open, and did not address the statute of limitations problem as it relates to the monies in the partnership accounts.

monetary transfer was made to Bank Melli is enough to deny the Government's motion with respect to the money laundering claim.   Specifically, the Government has failed to establish the most basic of requirements for a money laundering claim under any one of the three statutory bases for such forfeiture.[10] In this regard, The Government is required to prove that the defendant "(1) acquire[d] the proceeds of a specified unlawful activity, and then (2) engage[d] in a financial transaction with those proceeds." *United States v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995), *superseded in part on other grounds as recognized in United States v. Genao*, 343 F.3d 578, 584 (2d Cir. 2003); *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994) ("[Section 1956 (a)(1)(B)] requires first that the proceeds of specified unlawful activity be generated, and second that the defendant, knowing the proceeds to be tainted, conduct or attempt to conduct a financial transaction with these proceeds with the intent to promote specified unlawful activity.").

Here, however, the Government has not met its burden. For example, the Government, at pages 24-25 of its memorandum of law, suggests that money was transferred to Bank Melli. Nowhere, hoever, is there a single document submitted in support of the Motion which creates any such record. For the reasons set forth below, the Government has failed to demonstrate any substantial connection between "the property and the offense" as is required by 18 U.S.C. § 983(c) and the Court should deny that portion of the motion seeking to forfeit Assa's Assets under any money laundering theory.

The Government has also failed to establish any concealment money laundering under 18 U.S.C. §1956(a)(1)(B)(i) as to Assa. The Government asserts that some $17 million was

---

[10]    With respect to the Government's money laundering claim, Judge Holwell explained that the "financial transactions" as to Assa, allegedly involved "Assa Corp.'s payment of expenses and taxes" and "Assa Corp.'s transfer of its distributions to Assa Ltd., to be sent on to Bank Melli." *In Re 650 Fifth Avenue and Related Properties*, 777 F. Supp 2d at 559. Without establishing any transfer of money to Bank Melli, which is the fundamental claim of the Government, the payment of United States taxes and expenses of a New York State going concern cannot be classified as a financial transaction with a SUA proceed, because no SUA proceeds could have been generated as to Assa.

distributed to Assa Corp. between the years 2000 and 2007 in accordance with the partnership agreement, a lawful agreement under New York State law, and that $1.2 million dollars were sent to Assa Limited between 2005 and 2006. However, as set forth above, nowhere does the Government indicate that any money was sent to Bank Melli. Indeed, though the Government asserts without factual support, that "$17,351,000 was transferred to Assa Corp." (gov. memo at 44), the Government's motion papers do not establish that the same amount was allegedly transferred from Assa Corp. anywhere. Instead, the Government simply asserts that less than 10% of that amount was transferred "overseas" from 2005-2006, and certainly not to Bank Melli. (Gov. Memo. At 44). However, an international wire transfer to Assa Limited "out of the country" is not sufficient to demonstrate that a financial transaction occurred with the intent to conceal Bank Melli's ownership, since the Government has not established that any further action was taken with respect to those funds after the $1.2 million was allegedly sent to Assa Limited. Therefore, neither the $17 million dollars nor the portion thereof, namely the $1.2 million dollars, constitute property involved in money laundering, because there is no demonstration that any transaction was conducted with the purpose of concealing Bank Melli's ownership. Nor do these alleged transactions form a basis for forfeiting all of the Minority Interest, and the portion of the monies in the 650 Fifth Avenue accounts which Assa is entitled to.

Indeed, the Government asserts that the partnership was created to retire Bank Melli's loan, not to conceal Bank Melli's interest.  Accordingly, the Government's attempt to argue that "transfers took place for any reason other than pursuant to the Partnership Agreement" and to impose a nefarious purpose to the existence of the partnership is not supported by the

Government's own allegations as to Assa Corp. and the retirement of Bank Melli's loan on the property in 1989.

The Government's motion seeking forfeiture of Assa's Assets, and in particular, the minority interest of the 650 Fifth Avenue Partnership, under a promotion theory, fails as well. First, under §1956(a)(1) only transactions involving "proceeds" of unlawful activities monetary transactions are addressed. This section, as asserted, cannot serve as a basis for forfeiture of the Assa Corp.'s minority interest, because there is no demonstration that the minority interest was used to pay for improvements or to manage the Building. Indeed, the Government has not cited to a single case for any such argument and certainly no document. Instead, the Government asserts, in error, that "[b]y making partnership distributions… Assa can continue to provide services to the GOI by… remitting money to Bank Melli" (Gov. Memo at 46), and that on this ground, Assa Corp.'s minority interest should be forfeitable under a promotion theory. However, in addition to the fact that there is no demonstration that any money was in fact remitted to Bank Melli, the Government has not shown how even if any money was sent to Bank Melli, that these hypothetical transfers can be equated with "paying for improvements" to the Building. Accordingly, the Government has not established any promotion money laundering as to Assa Corp., and certainly not as to the Minority Interest. It appears that the Government has completely overlooked the legal requirements which this Court has spelled out for the Government in terms of establishing a promotion money laundering claim, i.e. to the effect that the Government must show "that the receipt and deposit of laundered funds was made with the *intent* to promote the specified underlying unlawful activity, be it, for example, by promoting continued illegal activity or by being essential to the completion of the scheme." *In re 650 Fifth*

*Ave. & Related Properties*, 777 F. Supp. 2d 529, 561 (S.D.N.Y. 2011), *citing United States v. Thorn*, 317 F.3d 107, 133 (2d Cir. 2003)

As to the international and conspiracy to commit international money laundering under 18 U.S.C. 1956 §(a)(2), the Government's motion similarly falls short. There is no factual demonstration that any money was sent to Bank Melli, though the Government disingenuously asserts so in argument at, for example, page 47 of its Memorandum, that Assa Corp. "[supplied] money to Bank Melli". Even if the Government had demonstrated that the $4,000,000 it asserts was sent to Assa Limited between 2002 and 2004 was then later transferred to Bank Melli, the Government has failed to explain that the $3,000,000 it seized from U.S. accounts in October, 2008, and the money in the partnership accounts as well, had never been transferred overseas. Additionally, though the Government suggests that at all times the partnership "transferred rental income from the Building to Assa Corp.", the Government overlooks the fact that it alleges that no partnership distributions were made after December 2007. Therefore, the Government has not established that there was any intent to promote an IEEPA violation as to those funds which were never transferred out of the partnership accounts or out of Assa's accounts. Accordingly, these funds are not subject to forfeiture under an international money laundering theory.

## IV

## THE TRANSLATED DOCUMENTS RELIED ON BY THE GOVERNMENT IN SUPPORT OF ITS MOTION ARE INADMISSIBLE

In order for a document to be entered into evidence, the "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Thus, courts regularly exclude reliance on translations of documents that are not accompanied by a declaration or affidavit attesting to the accuracy of such translations. *See e.g. Kassim v. City of Schenectady*, 415 F.3d 246, 251 (2d Cir. 2005) (translation of document from

Arabic to English properly excluded because "[t]here was no foundation to establish that the exhibit was a competent translation of the Arabic notes"); *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*, No. 00 Civ. 5684, 2000 WL 34017119, *6, n.4 (C.D. Cal. Sept. 18, 2000) *aff'd*, 64 F. App'x 70 (9th Cir. 2003) (translation of document filed with the Government of Sti Lanka because "there is nothing before the Court which would enable to determine that the translator is in fact qualified to" make the translation).

Here, the Government seeks to rely on 38 translations of documents (i.e., Exhibits 14-T, 21-T, 24-T, 25-T, 27-T, 28-T, 29-T, 30-T, 31-T, 32-T, 38-T, 39-T, 40-T, 41-T, 44-T, 45-T, 46-T, 47-T, 48-T, 52-T, 54-T, 72-T, 73-T, 74-T, 75-T, 76-T, 77-T, 79-T, 80-T, 81-T, 82-T, 83-T, 84-T, 85-T, 86-T, 108, 109, and 111-T to the McReynolds Decl.) in support of its motion.  Not one of these documents however, is accompanied by a certificate, declaration, or affidavit of the translator of such document attesting to the accuracy of the translation.  Rather, all the Government states regarding these translations is that they have been prepared by "a Farsi linguist employed by the FBI" or "the Office of the District Attorney of New York."  This is so because even the Government is uncertain as to the accuracy of the translations.  In this regard, the Government notes that the "English-language translations of Persian documents attached to this affidavit are not necessarily final drafts, and are subject to review and revision." McReynolds Aff. at fn. 1.  Accordingly, the Government should be precluded from relying on such documents and the Motion should be denied.  *Amirkhanian v. U.S.I.N.S.*, 119 F. App'x 302, 304 (2d Cir. 2004) (translation of transcript that was "was not a word for word translation" properly excluded).[11]

---

[11]     The original foreign language versions of these documents should necessarily be precluded as well, since proper English-language translations have not been submitted by the Government.

## V

## ASSA'S DUE PROCESS RIGHTS HAVE BEEN VIOLATED

The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend V.   It is well settled that The Fifth Amendment's due process clause applies equally to both United States citizens and foreign nationals. *United States v. Coke*, 07 Cri.   971, 2011 WL 3738969, *4 (S.D.N.Y. Aug. 22, 2011) ("the Fifth Amendment Due Process clause can protect a foreign national being prosecuted in the United States."); *Kadi v. Geithner*, No. 09 Civ. 0108, 2012 WL 898778, *21 (D.D.C. Mar. 19, 2012) *appeal dismissed*, 12-5076, 2012 WL 3243996 (D.C. Cir. July 31, 2012) (due process protections are provided to a foreign national with property interests in the United States).

Here, as more fully set forth below, the Government has violated Defendant's due process rights in two particular ways.   First, the Government has improperly leveraged its ongoing criminal investigation in this matter to gain favorable testimony from witnesses to be used in this civil action and to scare witnesses from testifying.   Second, the Government has engaged in a dilatory and abusive course of conduct with respect to discovery herein, severely prejudicing Defendant's ability to defend against this action.

Accordingly, due to this egregious conduct on the part of the Government, the Motion should be denied in its entirety.[12]

---

[12]     So cavalier is the Government towards this Court's orders and ruling, the Government did not file its Motion for summary judgment until after the August 16, 2013 submission date as ordered by this Court.

## A.   THE GOVERNMENT IS IMPROPERLY USING ITS <u>CRIMINAL INVESTIGATION TO INTIMIDATE WITNESSES</u>

It is well settled that "[t]he right to offer the testimony of witnesses … to establish a defense… is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  *See also United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir. 2013) ("A defendant has a fundamental due process right to present a defense.").  Thus, where the State substantially interferes with defense witnesses' choice to testify on behalf of a defendant, such defendant's due process rights have been violated.  *United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988) ("intimidation or threats that dissuade a potential defense witness from testifying may infringe a defendant's due process rights."); *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991).[13]

Here, the Government, by leveraging its ongoing criminal investigation of this matter has coerced witness into giving interviews favorable to the Government's case and intimated witness favorable to Defendants, causing them to not testify, and thus severely prejudging Defendants.



---

[13]     While these cases involve criminal investigations, they are equally applicable here as the right to present a defense has long been recognized in civil forfeiture cases as well. *Windsor v. McVeigh*, 93 U.S. 274, 277 (1876); *Jenkins v. McKeithen*, 395 U.S. 411, 429-31 (1969).  Moreover, this court has noted that "this is a civil case even though it has criminal aspects."  De Funis Decl., Ex. E at Ex. 9 thererto, Excerpt of Tr. of Hr'g, July 10, 2013, at 11:20-21.

[redacted]

[redacted]

**b. The Government Scared Defendants' Witnesses**
**From Testifying At Their Scheduled Depositions**

[redacted]

[redacted]

[redacted]

[redacted]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

**B.    THE GOVERNMENT HAS ABUSED DISCOVERY HEREIN**

The Government has engaged in a prolonged, willful and bad faith course of conduct designed to gain an unfair advantage and corrupt the entire discovery process in these actions, thus violating the Defendants' due process rights.

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

Accordingly, given the Government's course of witness intimidation coupled with the its willful and bad faith discovery practices, resulting in a violation of Defendant's due process rights, the Court should deny the Motion in its entirety.

---

[14]   The Court also noted the importance of OFAC discovery in its July 22, 2013 order when it order the deposition of an OFAC representative because the of "the presence of an OFAC representative on the Government's proposed witness list (ECF No. 470), as well as references to OFAC throughout this case."

[15]   For the sake of brevity, the Defendants incorporates by reference, Alavi Foundation's and 650 Fifth Avenue Company's Memorandum of Law in Support of Claimnats' Motion to Dismiss for Due Process Violations (Dkt. No. 713), dated August 21, 2013 and the Declaration of Daniel S. Ruzumna in Support of Claimant's Motion to Dismiss for Due Process Violations (Dkt. No. 714), dated August 21, 2013, and the exhibits annexed thereto (Dkt No. 714-1-27) for a recitation of additional occurrences of the Government's dilatory discovery practices.

## VI

## THE MOTION SHOULD BE DENIED BECAUSE DISCOVERY IS INCOMPLETE

A motion for summary judgment should be denied where discovery is incomplete. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, *after* adequate time for discovery") (emphasis supplied); *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985) ("Grants of summary judgment on an incomplete record are generally disfavored"); *Park Ave. Bank, N.A. v. Bankasi*, No. 93 Civ 1483, 1995 WL 739514, *1 (S.D.N.Y. Dec. 13, 1995) *aff'd sub nom. Park Ave. Bank, N.A. v. Ziraat Bankasi*, 101 F.3d 1393 (2d Cir. 1996) ("Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery").

Indeed, "[i]t is the duty of this court under Rule 56(f)[16] to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment." *Elliott Assocs., L.P. v. Republic of Peru*, 961 F. Supp. 83, 86 (S.D.N.Y. 1997). Thus, summary judgment may be denied based on incomplete discovery where a party submits an "affidavit or declaration explaining what additional facts are sought, how they will create a factual issue precluding summary judgment, what efforts have been made to obtain these facts and why these efforts have failed." *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 99 (S.D.N.Y. 1997) (internal quotations omitted). *See also Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, No. 11 Civ. 3979, 2013 WL 372162, *11 (S.D.N.Y. Jan. 31, 2013) (pursuant to Fed. R. Civ. P. 56(d), to defeat a motion for summary judgment based on the need for additional discovery, the party opposing summary judgment must explain (i) the nature of the uncompleted discovery; (ii) how the facts sought are reasonably expected to create a genuine issue of material

---

[16]    Fed. R. Civ. P. 56(d) is the successor rule to Fed. R. Civ. P. 56(f). *See* Fed. R. Civ. P. 56 2010 Advisory Committee Notes (Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)).

fact; (iii) what efforts the affiant has made to obtain those facts; and (iv) why those efforts were unsuccessful.)

Here, the Government has only just produced OFAC documents on August 16 and 23, 2013, and Defendants have not yet had a meaningful opportunity to properly review these documents or depose OFAC.  Koplovitz Decl., ¶¶ 6, 7, Ex. D.  Specifically, on or about May 26, 2011 and June 2, 2011 Defendants submitted a Freedom of Information Act ("FOIA") request seeking, among other things, all documents that formed the basis of OFAC's blocking of Defendants' assets.  (Koplovitz Decl. ¶ 2, Ex. A).  OFAC then asked Defendants to modify their FOIA request.  (*Id.* at ¶ 3).  On or about June 30, 2011, Defendants complied with OFAC's request by submitting a revised FOIA Request.  (*Id.* at ¶ 3, Ex. B).  Not until August 16, 2013 and August 23, 2013 – two years after Defendants first requested these documents did the Government produce any documents. (*Id.* at ¶ 6, Ex. D).

Moreover, after being unilaterally cancelled by the Government, the OFAC deposition, was finally scheduled on August 28, 2013, to take place on September 3, 2013, **after** Defendants are required to oppose the Motion .  (Koplovitz Decl. ¶ 7, Ex. G).

The OFAC discovery (i.e., the OFAC documents and deposition) is essential for Defendants' defense of the Government's instant action because the Government's sanction programs, designation of Bank Melli and inclusion of Bank Melli as being the "Government of Iran", designation of Assa Corp. and Assa Limited and OFAC's press release that they are "fronts" for Bank Melli underlie the Government's entire case.   This Court, in a similar circumstance, denied a motion for summary judgment where documents were produced, but depositions had not yet been taken, and the "voluminous documents produced… have not yet

been fully reviewed." *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 185 (S.D.N.Y. 2000).

Accordingly, because discovery is far from complete – the key deposition has yet to be taken, the entire OFAC file has yet to be produced and Defendants have not been given ample time to review the Government's latest voluminous document production – Plaintiffs' motion must be denied. *Nat'l R.R. Passenger Corp. v. Steadfast Ins. Co.*, No. 06 Civ. 6072, 2009 WL 1873719 (S.D.N.Y. June 30, 2009) ("Discovery is incomplete and summary judgment cannot be granted.").

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Government's Motion for summary should be should be denied in its entirety.

Dated:   New York, New York
            August 30, 2013

**ROSEN LIVINGSTON & CHOLST LLP**

By:____*s/Peter I. Livingston*_____
         Peter I Livingston
         Deborah B. Koplovitz
275 Madison Avenue, Suite 500
New York, New York 10016
Tel: 212-687-7770
Email: pil@rosenlivingston.com

**JAFFE & ASHER LLP**
         Donald F. Luke
         Bension DeFunis
600 Third Avenue
New York, New York 10016
212-687-3000
Email: dluke@jaffeandasher.com

*Attorneys for Defendants*
    *Assa Corporation and Assa Limited*
    *(s/h/a Assa Company Limited)*