```
                                              ┌─────────────────────────────────────┐
                                              │ USDC SDNY                           │
                                              │ DOCUMENT                            │
                                              │ ELECTRONICALLY FILED                │
UNITED STATES DISTRICT COURT                  │ DOC #: _____             │
SOUTHERN DISTRICT OF NEW YORK                 │ DATE FILED:   MAY 15 2014           │
------------------------------------------ X  └─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                  :

                  :

IN RE: 650 FIFTH AVENUE AND       :

RELATED PROPERTIES             :

                  :

                  :

                  :
------------------------------------------------------------ X

08 Civ. 10934 (KBF)
and all member and related
cases

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Claimants Edwena Hegna, individually and as executrix of the estate of Charles Hegna, Steven A. Hegna, Craig M. Hegna, Lynn Marie Hegna Moore, and Paul B. Hegna (collectively, the "Hegnas") have moved for summary judgment on their claims with respect to the building at 650 Fifth Avenue ("the Building"). (ECF No. 989.) Several groups of judgment creditor plaintiffs, defendants the Alavi Foundation ("Alavi") and 650 Fifth Avenue Company ("650 Fifth Ave. Co."), and the Government have opposed the motion. (ECF Nos. 1063–1070.) The motion became fully briefed on March 3, 2014. (ECF No. 1099.)

In addition to opposing the Hegnas' motion, the Government has moved to strike or, in the alternative, for summary judgment. (ECF No. 1072.) That motion also became fully briefed on March 3, 2014. (ECF No. 1099.)

For the following reasons, the Hegnas' motion is DENIED and the Government's motion is GRANTED.

I.    BACKGROUND

The Court assumes familiarity with the facts underlying this action,

particularly the facts described in this Court's September 16, 2013 and April 18,

2014 opinions.  See In re 650 Fifth Ave. & Related Props., No. 08 Civ. 10934 (KBF),

2014 WL 1516328, at *1–7 (S.D.N.Y. Apr. 18, 2014); In re 650 Fifth Ave. & Related

Props., No. 08 Civ. 10934 (KBF), 2013 WL 5178677, at *6–16 (S.D.N.Y. Sept. 16,

2013).

On January 22, 2002, the Hegnas obtained a default judgment against Iran

and its Ministry of Information and Security ("MOIS").  (Movants' Local Rule

56.1(a) Concise Statement of Material Facts ("Hegna 56.1") ¶¶ 1, 2, No. 11 Civ. 3761

(KBF), ECF No. 36;[1] Gov't's Resp. to Hegna Claimants' Local Rule 56.1(a) Concise

Statement of Material Facts ("Gov't Resp.") ¶¶ 1, 2, ECF No. 1071; Gov't's Local

Rule 56.1 Statement of Add'l Undisputed Material Facts ("Gov't 56.1") ¶ 1, ECF No.

1071; Decl. of Michael D. Lockard ("Lockard Decl.") ¶ 2, Ex. 1, ECF No. 1073.)  On

February 7, 2002, the Hegnas obtained an Amended Order and Judgment that

granted them $42 million in compensatory damages against Iran and MOIS jointly

and severally, and $333,000,000 in punitive damages against MOIS only.  (Gov't

56.1 ¶ 2; Lockard Decl. ¶ 3, Ex. 2.)  On or about November 27, 2002, the Hegnas

enrolled their amended judgment with the Clerk of this Court.  (Gov't 56.1 ¶ 7;

Lockard Decl. ¶ 4, Ex. 3.)  The Hegnas' enrolled judgment is against Iran and

---

[1] The Hegnas' motion for summary judgment incorporates the Rule 56.1 statement that they
submitted on their motion for summary judgment in Hegna v. Islamic Republic of Iran, No. 11 Civ.
3761 (KBF).  (See Mem. of L. in Supp. of Hegna Claimants' Mot. for Summ. J. ("Hegna Mot.") 3, ECF
No. 990.)

MOIS, not against 650 Fifth Ave. Co., Alavi, or Assa. (Gov't 56.1 ¶¶ 3–7; Lockard Decl. Ex. 2.)

On or about March 20, 2003, the Hegnas submitted applications for payment to the United States Department of the Treasury pursuant to the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"). (Gov't 56.1 ¶ 8; Lockard Decl. ¶¶ 6–11, Exs. 5–10.) Each application stated, in part, "I hereby relinquish . . . all rights and claims to punitive damages awarded in connection with the claim or claims I brought under 28 U.S.C. 1605(a)(7) and any related interest, costs, and attorneys fees." (Gov't 56.1 ¶ 9; Lockard Decl. Exs. 5–10.) On or about July 29, 2003 and November 12, 2003, the United States Treasury Department made pro rata payments to the Hegna plaintiffs from funds designated for payments relating to judgments against Iran. (Gov't 56.1 ¶ 12; Lockard Decl. ¶¶ 15–19, 21–26, Exs. 14–18, 20–25.) In total, the Hegnas received $8,381,121.14 from the Treasury Department's Office of Foreign Assets Control ("OFAC"). (Gov't 56.1 ¶ 14; Lockard Decl. ¶ 13, Ex. 12.)[2]

On December 17, 2008, the Government commenced this forfeiture action against Assa Corporation, Assa Company Limited, and Bank Melli Iran's interests in 650 Fifth Ave. Co., including the Building. (Gov't 56.1 ¶ 18; ECF No. 1.) On November 16, 2009, the Government filed an amended complaint that added claims for the forfeiture of interests held by Alavi and 650 Fifth Ave. Co. (ECF No. 51.)

---

[2] The Hegnas' $8.4 million payment has reduced their total unpaid damages to approximately $33.6 million. (See Gov't 56.1 ¶¶ 2, 13, 14.)

On January 23, 2009, the United States obtained a notice of pendency against the Building. (Gov't 56.1 ¶ 22; Lockard Decl. ¶ 34, Ex. 33.)

On December 29, 2008, the Hegnas obtained a Writ of Execution that refers to "the goods and chattels of the Islamic Republic of Iran, its agencies and instrumentalities, including, but not limited to, Bank Melli Iran, Assa Corporation, and/or Assa Co Limited." (Gov't 56.1 ¶ 20; Lockard Decl. Ex. 29; Decl. of Ralph P. Dupont ("Dupont Decl.") Exs. 4, 4A, 4B, 11 Civ. 3761 (KBF), ECF No. 38.) On March 12, 2010, the Hegnas filed claims to the assets in which Assa Corp., Assa Co. Limited, and Bank Melli had an interest. (Lockard Decl. ¶¶ 41–45, Exs. 40–44; ECF Nos. 94–97.) The Hegnas did not claim any interest that Alavi had in 650 Fifth Ave. Co. (Id.) On March 27, 2009, the Hegnas obtained a signed order to show cause seeking turnover and sale of the Building to satisfy the Hegnas' default judgment against Iran and MOIS. (Gov't 56.1 ¶¶ 23, 24; Lockard Decl. ¶ 35, Ex. 34.) On March 30, 2009, the Hegnas filed a notice of lis pendens against the Building. (Gov't 56.1 ¶ 26; Lockard Decl. ¶ 36, Ex. 35.) The Hegnas have recorded no other liens against the Building and have no other judgment listed in their names against the Building. (Gov't 56.1 ¶ 25; Lockard Decl. ¶ 37, Ex. 36.)

On April 29, 2010, the U.S. District Court for the District of Columbia granted the Hegnas' motion to convert their default judgment. (Gov't 56.1 ¶ 15; Lockard Decl. ¶ 27, Ex. 26.) This conversion gives effect to the Hegnas' judgment against Iran "as if it had been rendered in an action originally filed under 28 U.S.C. § 1605A(c)." (Id.) The converted default judgment remains against Iran and MOIS,

and not against 650 Fifth Ave. Co., Alavi, or Assa.  (Gov't 56.1 ¶ 17; Lockard Decl. Ex. 26.)

Until the Court's September 16, 2013 opinion forfeiting 650 Fifth Ave. Co.'s interest in the Building, 650 Fifth Ave. Co. held a 100% interest in the Building. (Gov't 56.1 ¶ 33; Lockard Decl. ¶ 40, Ex. 39.)

On October 21, 2013, the Hegnas filed the instant motion for summary judgment, in which they argue that they are innocent owners of the Building and that the Government should compensate the Hegnas to the extent of their ownership interest in the Building pursuant to 18 U.S.C. § 983(d)(5)(B).  (ECF No. 989; ECF No. 990, at 8.)  The motion became fully briefed on March 3, 2014.

II.    APPLICABLE LEGAL PRINCIPLES

A. Summary Judgment

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts

showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing

party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

B. Motion to Strike

"At any time before trial, the government may move to strike a claim or answer . . . because the claimant lacks standing." Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(8)(c). "The motion . . . may be presented as a motion for judgment on the pleadings . . . ." Id. "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In applying that standard, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id.

## C. Standing in Forfeiture Proceedings

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2d Cir. 1999); see also United States v. Premises & Real Prop. at 4492 S. Livonia Rd., Livonia, N.Y., 889 F.2d 1258, 1262 (2d Cir. 1989). The burden of proof to establish sufficient standing rests with the claimant. Mercado v. U.S. Customs Serv., 873 F.2d 641, 644 (2d Cir. 1989).

### 1. Article III standing

Article III of the Constitution permits federal courts to hear only actual cases or controversies. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements." Id. First, the claimant must have suffered an "injury in fact" of a "legally protected interest"; second, there must be a "causal connection between the injury and the conduct complained of"; and third, it must be "likely," as opposed to "speculative," that the injury can be "redressed by a favorable decision." Id. at 560–61; Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1157 (2d Cir. 1994).

"Generally, what is required in order to establish standing of this kind in civil forfeiture actions is demonstration of an ownership or possessory interest in the seized or forfeited property." United States v. PokerStars, No. 11 Civ. 2564 (LBS), 2012 WL 1659177, at *2 (S.D.N.Y. May 9, 2012) (citing Cambio Exacto, 166 F.3d a

527). An "interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account." United States v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997). A general unsecured creditor "does not possess a legal right, title, or interest in the property that [is] forfeited as required for standing." DSI Assocs. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007) (internal quotation marks omitted); see also United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191 (D.C. Cir. 1995) (stating that "a general creditor can never have an interest in specific forfeited property"); United States v. Schwimmer, 968 F.2d 1570, 1581 (2d Cir. 1992) (holding that a general creditor does not have "an interest in property ordered forfeited that invalidates an order of forfeiture").

2. The innocent owner defense

A claimant in a civil forfeiture action must also show that it is an "innocent owner" of the property that is to be seized pursuant to 18 U.S.C. § 983(d)(1). "The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1).

Section 983 provides for two categories of innocent owners. The first category comprises owners whose property interests were in existence "at the time the illegal conduct giving rise to forfeiture took place," as long as they were unaware of the conduct or, "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of property." 18 U.S.C. § 983(d)(2)(A). The second category comprises owners who

9

acquired their property interests "after the conduct giving rise to the forfeiture took place," but who were "bona fide purchaser[s] or seller[s] for value" and "did not know and [were] reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).

An "owner" is "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6). A "person with only a general unsecured interest in, or claim against, the property or estate of another" is not an "owner." Id.

### 3. Ownership under New York law

"Courts look to state law to determine the existence of title or other ownership or possessory interest." United States v. $79,000 in Account No. 2168050/6749900 at Bank of N.Y., 96 Civ. 3493 (MBM), 1996 WL 648934, at *4 (S.D.N.Y. Nov. 7, 1996).

In New York, a lien against real property expires ten years after the judgment is docketed. See N.Y. C.P.L.R. § 5203(a). Furthermore, a "'judgment is not docketed against any particular property, but solely against a name, and if that name is incorrectly set forth, a purchaser in good faith should not be the one to suffer; but rather the creditor, who should see to it that the docketing is in the correct name of the debtor, if it is to be notice to subsequent purchasers.' It is the duty of a judgment creditor who seeks to create a lien on real property held by the judgment debtor . . . to ensure that the judgment reflects the full name of the

10

judgment debtor." We Buy Now, LLC v. Cadlerock Joint Venture, LP, 46 A.D.3d 549, 549–50 (N.Y. App. Div. 2d Dep't 2007) (quoting Grygorewicz v. Domestic & Foreign Discount Corp., 40 N.Y.S.2d 676, 678 (Sup. Ct. 1943)).

III.   ANALYSIS

A. Punitive Damages

As an initial matter, the Hegnas relinquished their right to the $333 million they received in punitive damages when they applied for and received $8.4 million in payment from the Treasury Department in 2003. (See Hegna 56.1 ¶ 2; Gov't 56.1 ¶¶ 2, 8, 9, 12–14.) The Hegnas argue that their conversion of their judgment in April 2010 "clarified that Iran—not only its agencies and instrumentalities—is liable for punitive damages," and thus permits them to pursue their punitive damages claim against Iran. (Mem. of L. in Supp. of Hegna Claimants' Mot. for Summ. J. ("Hegna Mot.") 4 n.2, ECF No. 990.) This argument is without merit. The Hegnas' Amended Order and Judgment simply "convert[ed] their default judgment from one based on 28 U.S.C. § 1605(a)(7) to one based on 28 U.S.C. § 1605A." Hegna v. Islamic Republic of Iran, 495 F. App'x 191, 193 (2d Cir. 2012). The conversion does not create new rights to punitive damages that the Hegnas had previously relinquished. See Hegna v. Islamic Republic of Iran, 769 F. Supp. 2d 657, 662 (S.D.N.Y. 2011) (finding that the 2003 releases were "operative notwithstanding the conversion of plaintiffs' judgment"). As the Second Circuit has now twice held, the Hegnas expressly waived their right to collect any punitive damages in exchange for receiving a partial payment of $8.4 million on their

11

judgment. See Hegna, 495 F. App'x at 193; Hegna v. Islamic Republic of Iran, 402 F.3d 97, 98 (2d Cir. 2005); Hegna v. Islamic Republic of Iran, 299 F. Supp. 2d 229, 230 (S.D.N.Y. 2004).

B. Standing

1. The Hegnas' judgment against Iran and MOIS

The Hegnas lack standing because they lack "an ownership interest in the specific property" of the Building and the associated bank accounts. See 18 U.S.C. § 983(d)(6). The Hegnas obtained a default judgment against Iran and MOIS; they have no judgment against Alavi, Assa, or 650 Fifth Ave. Co. (See Hegna 56.1 ¶¶ 1, 2; Gov't 56.1 ¶¶ 1–7.) The Hegnas' judgment does not purport to assert a claim against the interest of 650 Fifth Ave. Co., the Building's owner of record, or against the Building itself.

A judgment against Iran and MOIS is insufficient to obtain a legal interest "in the specific property sought to be forfeited": the Building. 18 U.S.C. § 983(d)(6)(A); see Ribadeneira, 105 F.3d at 836; ("[A]n interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account."); United States v. Madoff, No. 09 Cr. 213 (DC), 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012) ("To have a claim in the specific property, a creditor . . . must secure a judgment or perfect a lien against a particular item."). Without a specific ownership interest in the Building, the Hegnas are general creditors, who lack standing under the statute. See Ribadeneira, 105 F.3d at 836–37 (denying standing to unsecured creditors); BCCI

12

Holdings, 46 F.3d at 1191 ("[A] general creditor can never have an interest in specific forfeited property . . . ."); H. R. & C. Co. v. Smith, 242 N.Y. 267, 269 (1926) ("[A] mere judgment is never a lien against the real estate of the judgment debtor.").

Even if a judgment against Iran and MOIS were sufficient to obtain an interest in their property, it would be insufficient to obtain an interest in the property of 650 Fifth Ave. Co., the entity that possessed a fee simple interest in the Building. A "judgment does not become a lien upon the real property of a judgment debtor who is designated in the docket by a fictitious or incorrect name." 9 Carmody-Wait 2d § 63:408 (2013) (citing Grygorewicz, 40 N.Y.S.2d at 678); see also We Buy Now, LLC, 46 A.D.3d at 549.

The Hegnas argue that their judgment against Iran is valid against 650 Fifth Ave. Co. because of this Court's prior summary judgment decisions, which found that Alavi and 650 Fifth Ave. Co. "are" Iran, In re 650 Fifth Ave., 2014 WL 1516328, at *9–14. (See Mem. of L. of Hegna Claimants in Further Supp. of Mot. for Summ. J. ("Hegna Reply") 3–5, ECF No. 1099.)[3] The Hegnas also argue that the TVPA and the National Defense Authorization Act "were enacted for the specific purpose for preventing foreign state sponsors of terrorism from evading execution of judgments by hiding behind state-law alter-ego requirements." (Hegna Reply 6.) That may

---

[3] The Hegnas also assert that the Court made "critical findings" in denying Alavi, 650 Fifth Ave. Co., and Assa's motions to dismiss. (See Hegna Mot. 3–5, 14 (citing In re 650 Fifth Ave. & Related Props., 881 F. Supp. 2d 533 (S.D.N.Y. 2012)).) That decision provides no basis for determining that the Hegnas' judgment is valid against 650 Fifth Ave. Co. Rather, the Court "accept[ed] as true all material factual allegations in the complaint," as it was required to do on a motion to dismiss. In re 650 Fifth Ave., 881 F Supp. 2d at 544.

13

well be true for general judgment creditors, but does not alter the narrow and specific requirements of establishing and maintaining a lien under state law.

Notwithstanding the Hegnas' arguments to the contrary, a judgment properly recorded against a judgment <u>debtor of record</u> does not automatically become a lien upon the real property of an <u>alter ego</u> of such a debtor. <u>See, e.g.</u>, <u>United States v. Ultra Dimensions</u>, 803 F. Supp. 2d 596, 600–01 (E.D. Tex. 2011); <u>Abercrombie & Fitch Stores, Inc. v. Am. Commercial Constr. Inc.</u>, No. 08 Civ. 925 (EAS), 2010 WL 1055265, at *2–4 (S.D. Ohio Mar. 18, 2010), <u>aff'd</u>, 499 F. App'x 550 (6th Cir. 2012). It is clear under New York ownership law that a judgment must be docketed against the "correct name of the debtor." <u>We Buy Now, LLC</u>, 46 A.D.3d at 549. Even after the Court's summary judgment decisions, the Hegnas took no steps to alter their judgment such that it was docketed against the correct name of the debtor rather than against Iran and MOIS. Put bluntly, the Hegnas cannot convert a lien against Iran and MOIS into a lien against specific assets owned by 650 Fifth Ave. Co.

Additionally, under partnership law, the Hegnas are limited to assets in which Assa and Bank Melli had an interest. (<u>See</u> Lockard Decl. ¶¶ 41–45.) "A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership." N.Y. P'ship Law § 51(2)(c). As set forth above, the Hegnas have asserted a lien interest in <u>Assa's</u> interest in the 650 Fifth Ave. Co. partnership and its property (the Building), not against Alavi's interest in the partnership or the partnership itself. Having asserted a claim only

14

against Assa's interest in the partnership, the Hegnas cannot attach or execute against any partnership property, including the Building. See id.; see also MacDonald v. MacDonald, 226 A.D.2d 594, 595 (N.Y. App. Div. 2d Dep't 1996) (explaining that a "partner's interest in partnership property is not subject to attachment or execution except to satisfy a claim against the partnership").

The Hegnas argue that the legal principles regarding partnership property are irrelevant because "the partnership among the Iranian claimants was a sham, a vehicle to funnel money illegally to Iran." (Hegna Reply 7.) This argument is unavailing. The 650 Fifth Ave. Co. partnership was, notwithstanding its ultimate purposes, valid under New York partnership law. The principles cited above regarding execution against partnership property are therefore applicable.

Additionally, because the Hegnas have only asserted a lien interest with respect to Assa's interest in the 650 Fifth Ave. Co. partnership, rather than the partnership itself, they have in fact asserted an interest against personal property. See N.Y. P'ship Law § 52 (explaining that a partner's interest in the partnership "is his share of the profits and surplus and the same is personal property") (emphasis added). Because judgment liens only provide a lien interest in a debtor's real property, not personal property, the Hegnas' claims even to Assa's interest in the partnership fail. See In re Thriftway Auto Rental Corp., 457 F.2d 409, 411 (2d Cir. 1972) (explaining that a judgment "creates no lien at all upon personal property, but merely enables a judgment creditor to obtain a lien through further action") (emphasis added); In re Tax Comm'n v. Shor, 43 N.Y.2d 151, 157 (1977).

15

2. Expiration of the lien

Even if the Hegnas possessed a valid judgment lien against a partial interest in the Building, any such lien expired in January 2012, ten years after the Hegnas obtained their judgment against Iran and MOIS (see Hegna 56.1 ¶ 1; Gov't 56.1 ¶ 1). See N.Y. C.P.L.R. § 5203(a) (explaining that a judgment lien is effective until "ten years after filing of the judgment-roll"). "If the 10 years expire without satisfaction of the judgment, the judgment, while retaining its validity, loses its lien value, which means that another creditor can sneak in with a lien and make the real property unavailable for satisfaction of the judgment." N.Y. C.P.L.R. § 5014 cmt. 2; see also Gletzer v. Harris, 51 A.D.3d 196, 202 (N.Y. App. Div. 1st Dep't 2008) ("[A]bsent the docketing of a renewal judgment, at the end of the 10-year period, another party must be able to obtain an interest in the judgment debtor's property free of the lien of the former judgment creditor."), aff'd, 12 N.Y.3d 468 (2009).

The Hegnas argue that, rather than sitting on their rights for ten years, "they sought to enforce their lien at every turn." (Hegna Reply 8.) However, there is no evidence that the Hegnas ever sought or obtained an extension of their ten-year judgment lien according to the procedures set forth in N.Y. C.P.L.R. § 5203. Thus, their other efforts cannot controvert the expiration of their lien under New York law. By allowing their purported judgment lien to expire, the Hegnas have lost any specific interest in the Building that they may possibly have acquired under that lien. Therefore, as of January 2012, the Hegnas became general unsecured creditors of Iran and MOIS. See id. ("[A]t the time [the judgment creditor's] lien

16

expired . . . , all that he held against [the debtor] was a money judgment and a right to seek another 10-year lien . . . ."). As general unsecured creditors, the Hegnas lack standing because they lack a specific interest in the forfeited property. See 18 U.S.C. § 983(d)(6) (excluding "a person with only a general unsecured interest in, or claim against, the property or estate of another" from the definition of "owner"); DSI Assocs. LLC, 496 F.3d at 184; BCCI Holdings, 46 F.3d at 1191; Schwimmer, 968 F.2d at 1581.

    C. Innocent Ownership

    Because the Hegnas lack a judgment against Alavi, Assa, and 650 Fifth Ave Co., and any lien based on a judgment rendered in January 2002 expired in January 2012, they do not have an "ownership interest in the specific property sought to be forfeited" and are not "owners" under the statute. 18 U.S.C. § 983(d)(6). Even if that were not the case, the Hegnas' innocent owner claims fail under either prong of 18 U.S.C. § 983(d).

    First, the Hegnas did not have a property interest at the time that the illegal conduct here had commenced—at the latest by 1995, when pertinent regulations took effect and when providing services to Iran became illegal. See In re 650 Fifth Ave. & Related Props., No. 08 Civ. 10934 (KBF), 2013 WL 5178677, at *19–22 (Sept. 16, 2013). The Hegnas argue that their purported interest in the Building predates the criminal conduct giving rise to forfeiture here, because "the forfeiture of the Building can only be based on criminal activity that took place after December 17, 2003," five years prior to the filing of the complaint in December 2008. (See Hegna

Mot. 14–15 (emphasis in original).)  This argument fails.  The statute of limitations

for bringing a claim depends on when the Government "discovered" the alleged

offense.  See 19 U.S.C. § 1621 (emphasis added).  However, the relevant question

under the innocent owner provisions is when the "illegal conduct giving rise to

forfeiture took place."  18 U.S.C. § 983(d) (emphasis added).  Here, the Hegnas

obtained their default judgment in 2002, several years after the unlawful conduct

commenced in 1995.  The Hegnas thus cannot meet the requirement of 18 U.S.C. §

983(d)(2)(A) that their property interest existed "at the time the illegal conduct

giving rise to forfeiture took place."

    Second, as set forth above, Hegnas lack a specific ownership interest in the

Building, and therefore cannot be bona fide purchasers under 18 U.S.C. §

983(d)(3)(A).  The Hegnas argue that "the relinquishment of . . . rights and remedies

otherwise conferred by law"—here, the Hegnas' relinquishment of rights to punitive

damages in 2003 in exchange for an $8.4 million partial payment—constitutes

consideration for purposes of determining a bona fide purchaser.  (See Hegna Mot.

16–18 (citing CFTC v. Walsh, 17 N.Y.3d 162, 175 (2011) (internal quotation marks

omitted)).)  This argument is without merit.  The Court is mindful that the Hegnas

may have "relinquished important rights to enforce their judgment in exchange for

partial payment pursuant to an agreement with the government in 2003."  (Hegna

Reply 14.)  Notwithstanding that fact, the Hegnas' agreements do not provide them

with any interest in the Building, but rather with an interest in money distributed

by the Treasury.  Without a specific interest in the Building, the Hegnas are merely

judgment creditors, not bona fide purchasers for value under 18 U.S.C. § 983(d)(3)(A).

Therefore, the Hegnas' innocent owner claims fail under either 18 U.S.C. § 983(d)(2)(A) or § 983(d)(3)(A).

IV.   CONCLUSION

For these reasons, the Hegnas' motion for summary judgment is DENIED and the Government's motion to strike or for summary judgment is GRANTED. The Hegnas shall occupy the same position as all other judgment creditor plaintiffs in this matter.  Accordingly, they shall be entitled only to the portion of the settlement between the Government and the parties that has been allocated for them, as discussed at the May 2, 2014 status conference.

The parties shall notify the Court by **Wednesday, May 21, 2014** of any further issues to be resolved and provide a proposed briefing schedule for their resolution.

SO ORDERED.

Dated:      New York, New York
            May 14, 2014

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge